BEFORE THE SECOND DIVISION, NOVEMBER 21, 1963

No. 68130.—Gallagher & Ascher Co. v. United States, protest 59/8832–10461 (Chicago).

LAWRENCE, Judge: The importation to which this protest relates consists of merchandise described on the invoice (plaintiff's exhibit 2) as "INCONEL CLIPS" which was produced in Toronto, Canada.

The collector of customs classified the merchandise as "Nickel Alloy strip" and imposed duty thereon at the rate of 12½ per centum ad valorem, as provided in paragraph 389 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 389), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802.

By its protest, plaintiff claims freedom from duty pursuant to Public Law 678. The protest was later amended claiming that said merchandise should be exempt from duty pursuant to the provisions of Public Law 869 of the 81st Congress, 2d session, 86 Treas. Dec. 27, T.D. 52656, as extended by Public Law 66 of the 84th Congress, 1st session, 90 Treas. Dec. 169, T.D. 53828.

The pertinent text of the statutes involved is here set forth.

Paragraph 389 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, *supra:*

Nickel, and alloys * * * in which nickel is the component material of chief value:

      In pigs or ingots * * *

      In bars, rods, plates, sheets, strips, strands, castings, wire, tubes, tubing, anodes, or electrodes_____ 12½% ad val.

Public Law 869, *supra:*

Sec. 1. (a) No duties or import taxes shall be levied, collected, or payable under the Tariff Act of 1930, as amended, or under section 3425 of the Internal Revenue Code with respect to metal scrap, or relaying and rerolling rails.

(b) The word "scrap," as used in this Act, shall mean all ferrous and nonferrous materials and articles, of which ferrous or nonferrous metal is the component material of chief value, which are second-hand or waste or refuse, or are obsolete, defective or damaged, and which are fit only to be remanufactured.

Sec. 2. Articles of which metal is the component material of chief value, other than ores or concentrates or crude metal, imported to be used in remanufacture by melting, shall be accorded entry free of duty and import tax, upon submission of proof, under such regulations and within such time as the Secretary of the Treasury may prescribe, that they have been used in remanufacture by melting: *Provided, however,* That nothing contained in the provisions of this section shall be construed to limit or restrict the exemption granted by section 1 of this Act.

Sec. 2. The amendment made by this Act shall be effective as to merchandise entered, or withdrawn from warehouse, for consumption on or after the day following the date of the enactment of this Act and before the close of June 30, 1951. It shall also be effective as to merchandise entered, or withdrawn from warehouse, for consumption before the period specified where the liquidation of the entry or withdrawal covering the merchandise, or the exaction or decision relating to the rate of duty applicable to the merchandise, has not become final by reason of section 514, Tariff Act of 1930.

Public Law 66, *supra:*

The first sentence of section 2 of the Act of September 30, 1950 (Public Law 869, Eighty-first Congress), is hereby amended by striking out "June 30, 1955" and inserting in lieu thereof "June 30, 1956": *Provided,* That this Act shall not apply to lead scrap or zinc scrap.

   *        *        *        *        *        *        *

The following exhibits were introduced by plaintiff and received in evidence:

Plaintiff's exhibit 1—office copy of the receiving report and debit of the Alter Co., indicating that the merchandise was delivered to it for processing.

Plaintiff's exhibit 2—commercial invoice.

Plaintiff's exhibit 3—statement of the Alter Co. plant manager, filed with the collector of customs on November 30, 1955.

Plaintiff's exhibit 4—deposition of Ben J. Solway.

Plaintiff, at the trial, called three witnesses, all of whom were well informed and fully qualified. Their combined testimony clearly established the origin, chemical, and physical characteristics of the subject merchandise; also, its sale, importation, and consumption.

Plaintiff's witness, Ben J. Solway, whose testimony was obtained through the medium of a commission duly issued by the court, stated that he was a wholesale metal dealer and president of the firm of G. Solway & Sons, Ltd., Toronto, Canada, with whom he had been associated for 35 years. He had intimate knowledge of the shipment in controversy which "* * * consists of nickel sheet scrap and clippings and ends of tubing suitable only for remetalling [*sic*] purposes and received from various industrial plants." It was purchased by his company as scrap and sold to the Security Alloys Co. of Chicago as scrap "under our invoice number 13404 in October, 1955." The Security Alloys Co. is the actual importer, Gallagher & Ascher Co., the plaintiff, being its agent

for the purpose of attending to certain customs formalities. Solway stated that the term "inconel" was a trade name of the International Nickel Co. for a metal alloy having the following analysis: Nickel 78.5 percent, iron 6.5 percent, chromium 14 percent. The pieces of metal in the instant shipment differ in size, gauge, and dimension.

Sidney Cohen, another witness for the plaintiff, testified that he was vice president of Security Alloys Co., the consignee of the importation; that his company is in the business of fabricating nickel alloys and stainless steel and preparing them for remelting purposes. He had been active in this line of business 36 years with Security Alloys and its predecessor. Cohen had arranged for the purchase of the subject merchandise from G. Solway & Sons, Ltd., of Canada. When the merchandise was imported, he had occasion to examine it in the presence of a customs inspector. He described the merchandise as stampings, mutilated and discarded pieces, snippings of various pieces of nickel alloy of various sizes, shapes, and gauges. In his opinion, the appearance and condition of the merchandise satisfied him that nothing could be done with it but to compress it into bundles and subject it to a remelting process.

Plaintiff's witness, Marvin Pesses, testified that, during the past 11 years, he had been plant superintendent and vice president of the Alter Co., who purchased the importation from the Security Alloys Co. At the time the subject merchandise was imported, he was plant superintendent in charge of the entire operation of the plant, which included the receipt, processing, and melting of material into the finished product. He stated that plaintiff's exhibit 1 is a copy of a receiving report prepared under his supervision and identifies the instant shipment from Security Alloys Co.

When the merchandise was received by the Alter Co., Pesses recognized the merchandise as scrap inconel in pieces of many different sizes, and since the merchandise was assigned lot numbers when it was received, it was easily identified.

The evidence introduced by plaintiff was not refuted by the defendant.

We are satisfied from an examination of the record that the merchandise in controversy is a nonferrous material which is waste or refuse from other manufacturing processes and fit only for remanufacture of the kind described in section 1(b), *supra*.

Upon the record and for the reasons above stated, the court is of the opinion that the merchandise to which this protest relates is entitled to freedom from duty within the scope of section 1 of Public Law 869 of the 81st Congress, as extended, *supra*.

The protest is sustained and judgment will issue directing the collector of customs to reliquidate the entry accordingly.